Bennie G. THOMPSON et al., Individually, etc., Plaintiffs,

Evelyn K. Thomas and Wade E. Sutton, Plaintiffs-Appellants,

v.

MADISON COUNTY BOARD OF EDUCATION and Robert E. Cox, Superintendent of the Madison County School District, Defendants-Appellees.

No. 72–1760.

United States Court of Appeals, Fifth Circuit.

March 13, 1973.

Frank R. Parker, Lawyers' Committee for Civil Rights Under Law, James M. Abram, Jackson, Miss., for plaintiffs-appellants.

G. Milton Case, R. L. Goza, Case & Montgomery, Canton, Miss., for defendants-appellees.

Before GODBOLD, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

Sutton and Thomas had been employed as teachers in the Madison County, Mississippi, school district but were not offered new contracts of employment for the 1970–71 school term. In their complaint, they sought injunctive relief from the school board's allegedly racially discriminatory refusal to rehire them as public school teachers. The district court found that the refusal of the Madison County Board of Education to rehire the two plaintiffs was based on "just and proper cause." We reverse.

After the complaint was filed the district court ordered the Board to provide the plaintiffs with written notices of the reasons for their discharges, a summary of the evidence, and the names of witnesses. The order further required the Board to hold a hearing, with the opportunity to the plaintiffs to cross examine witnesses, to present evidence, to be rep-

resented by counsel, and to be informed in writing of the final determination by the Board, with a statement of the reasons and evidence relied upon to support its decision. The record of the hearing was to be transcribed and the findings were to be filed with the district court. All of the preliminaries were accomplished and, after a full evidentiary hearing before the Board, both of the plaintiffs' claims were denied.

■ We agree with the district court that it was the Board's responsibility, in the first instance, to provide a hearing, on notice, to the plaintiffs. And we emphasize that "[t]he findings and decision of academic administrative bodies are to be upheld by the courts when reached by correct procedures and supported by substantial evidence." Green v. Regents of Texas Tech Univ., 5 Cir. 1973, 474 F.2d 594. When this case was set for trial, however, the parties were informed that there would be no trial in the sense of hearing witnesses or taking evidence. Instead, the court decided that it would rely on the facts as developed at the evidentiary hearing before the Board and that it would limit the formal trial to the presentation of legal argument.

■■ Due process mandates that a judicial proceeding give the affected parties an opportunity to be heard on the allegations asserted in the complaint and to present evidence and argument on the contested facts and legal issues framed by the answer to the complaint. Before a district court adjudges, it must determine the facts for itself on the basis of the proffered evidence. It may not simply decline to hear evidence and base its conclusions solely on the transcript of a school board's hearing. In short, a court can only render a judgment after the parties have been afforded a full and fair trial on the claims properly before the court.

■ As a result of the district court's refusal to grant the plaintiffs a full evidentiary hearing, we are unable to determine whether the Madison County School District is still in the process of implementing the desegregation orders of this Court or whether desegregation has already been completely achieved. Consequently, we find ourselves with no record on which to predicate a decision concerning the applicability of Singleton v. Jackson Municipal Separate School District, 5 Cir. 1969, 419 F.2d 1211. Moreover, although the district court's opinion implies that *Singleton* is applicable, the court failed to make any determination whether the defendants had complied with the *Singleton* requirement that "objective and reasonable non-discriminatory standards" be established for selection of the teachers to be dismissed, demoted, or not rehired.

Additionally, assuming that *Singleton* does apply, the district court's conclusion that there was "just cause" for Sutton and Thomas not being rehired appears to be erroneously based on a subjective comparison of the plaintiffs' proficiency in the classroom with the performance of other teachers in the school district. We recognize that under certain circumstances, *Singleton* notwithstanding, discharges on the basis of "just cause" may be warranted without reference to the school board's pre-established objective and reasonable standards. However, "just cause" in a *Singleton* situation does not refer to a teacher's lack of professional credentials, his poor performance in the classroom, his failure to abide by school regulations, his lack of cooperation, or other similar explanations. These types of reasons for discharge fall directly within the scope of *Singleton,* and accordingly such discharges must be justified on the basis of objective and reasonable standards for dismissal previously set by the school board. If this kind of a discharge can be justified in terms of the established objective standards, it is not for "just cause"; it is simply a discharge in compliance with *Singleton* cri-

teria. "Just cause" in a *Singleton* situation means types of conduct that are repulsive to the minimum standards of decency—such as honesty and integrity—required by virtually all employers of their employees, and especially required of public servants such as school teachers. No pre-established objective criteria are necessary to justify the discharge of a teacher whose conduct does not measure up to these minimum standards of behavior. For example, if a teacher came to school drunk, or was found stealing from the school treasury, or sexually assaulted a student, the school board could substantiate on "just cause" grounds its firing of that teacher, even though the school system was still in the process of desegregation and whether or not the school board had established any *Singleton* criteria for discharge or demotion.

If, on the other hand, desegregation of the Madison County school district has been completed so that *Singleton* is inapplicable, "just cause" would embrace a much wider range of teacher conduct, as well as other reasons. If the school district has a tenure system "just cause" might, for example, encompass reduction of the school system's budget, a teacher's gross neglect of his duties, or his continued poor performance in the classroom—*i. e.*, reasons for discharge or for not rehiring similar to those for which *Singleton* requires that the school board establish objective criteria during periods of desegregation. Furthermore, if the school district has no tenure system or if the plaintiffs were not tenured and had no expectation of reemployment, the school board's refusal to rehire them for whatever reason it chose would be justified, because such teachers would have no prospect of continuous employment from one school year to the next. In this situation, and in this situation alone, there is a difference between the "just cause" reasons for a school board's refusal to rehire a teacher for the next school year and its discharging or demoting a teacher during the school year.

During the school year, the reason for discharge or demotion must conform with the "just cause" standard for dismissing a tenured teacher or, if the school district does not have a tenure system, it must comply with due process requirements; whereas at the end of the school year, the school board can refuse to rehire a non-tenured teacher with no expectation of reemployment without any reason at all. *See* Moore v. Knowles, 5 Cir. 1972, 466 F.2d 531; Skidmore v. Shamrock Independent School District, 5 Cir. 1972, 464 F.2d 605. However, if the school board bases the nonrenewal of the teacher's contract on a charge that implicates the teacher's interest in liberty or property, he must be afforded an opportunity to refute the charge before the school officials. Board of Regents v. Roth, 1972, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548; Perry v. Sindermann, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

In sum, it is essential to any appraisal of the propriety of a school board's dismissal of a teacher to determine first if desegregation is still in process, for what constitutes "just cause" will vary greatly depending on whether or not *Singleton* is applicable. Moreover, if desegregation has been fully completed, it is necessary to determine if the school district has a tenure system; if so, then it is important to ascertain whether the plaintiffs are tenured or have a reasonable expectation of reemployment. Finally, the timing of the discharge is significant—*i. e.*, whether it comes at the end of a school year or during the school year.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

CLARK, Circuit Judge (concurring specially):

In my opinion the dicta in the panel majority regarding the due process con-

sequences of the academic procedure we have required to be established (particularly the notion that every court proceeding eventuating from the process must be conducted de novo) severely undercuts the principle on which the procedure rests. Hence this concurrence.

This circuit is firmly committed to the proposition that every teacher discharge controversy must be filtered through an academic hearing procedure before embedded federal claims become ripe for court adjudication. Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970); Stevenson v. Board of Education of Wheeler County, 426 F.2d 1154 (5th Cir. 1970). If this required hearing process is to serve its proper function, it must not be reduced to an empty gesture. Accordingly, court proceedings should not be conducted on a de novo basis. A school hearing procedure which is conducted in accordance with the dictates of procedural due process is entitled to great weight and if substantial evidence appears to support the school board's action, that ordinarily ends the matter. Green v. Regents of Texas Tech University, *supra*; Woodbury v. McKinnon, 447 F.2d 839 (5th Cir. 1971); Ferguson v. Thomas, *supra; see also* Fluker v. Alabama State Board of Education, 441 F.2d 201 (5th Cir. 1971); London v. Florida Department of Health and Rehabilitative Services, 448 F.2d 655 (5th Cir. 1971).

I agree that in the present case neither the district court nor this court is able to determine whether the Madison County School District is still in the process of implementing the desegregation orders of this Court or whether desegregation has already been completely achieved. Consequently, the academic hearing record furnished no basis on which to predicate a decision concerning the applicability of Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5th Cir. 1969).